UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 24 Cr. 293 (JGLC)

ANTON PERAIRE-BUENO and JAMES PERAIRE-BUENO,

Conference

Defendants.

------------------------------x

New York, N.Y.
August 19, 2024
11:10 a.m.

Before:

HON. JESSICA G.L. CLARKE,

District Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the Southern District of New York
BY: RUSHMI BHASKARAN
DANIELLE KUDLA
Assistant United States Attorneys

FICK & MARX LLP
Attorneys for Defendant Anton Peraire-Bueno
BY: DANIEL N. MARX
WILLIAM FICK

WILLIAMS & CONNOLLY LLP
Attorneys for Defendant James Peraire-Bueno Anton Peraire-Bueno
BY: KATHERINE A. TREFZ
DANIEL SHANAHAN
-and-
SHAPIRO ARATO BACH LLP
BY: JONATHAN BACH

THE COURT: We are here in United States v. Peraire-Bueno. Counsel, please state your name for the record, starting with the government.

MS. BHASKARAN: Good morning, your Honor. Rushmi Bhaskaran and Danielle Kudla, for the government.

THE COURT: Good morning.

MR. MARX: Good morning, your Honor. Daniel Marx, for Anton Peraire-Bueno, who's here in the courtroom.

MR. SHANAHAN: William Fick, also for Anton Peraire-Bueno.

THE COURT: Good morning.

MS. TREFZ: Good morning, your Honor. Katie Trefz from Williams & Connolly, on behalf of James Peraire-Bueno, who is here.

MR. BACH: Jonathan Bach, Shapiro Arato Bach, also for James.

MS. TREFZ: And Daniel Shanahan from Williams & Connolly is also here.

THE COURT: Good morning.

All right. Anton and James, I am Judge Clarke, the United States district judge assigned to your case. We are here to get an update on where things stand and to set some deadlines. We are also here for what is called a *Curcio* hearing with respect to counsel for James, which I will explain in more detail in a moment.

But, counsel, is there anything else for us to discuss today?

MS. BHASKARAN: Not from the government, your Honor.

MR. MARX: No, your Honor.

MS. TREFZ: No, your Honor.

THE COURT: All right. Ms. Trefz, do you have conflict counsel here by chance?

MS. TREFZ: By "conflict counsel," do you mean independent counsel for James?

THE COURT: Yes.

MS. TREFZ: Yes, Jonathan Bach.

THE COURT: Thank you.

I'm going to start with the *Curcio* hearing, and then we'll get into the schedule after that.

Ms. Trefz, did you explain to your client the purpose of this hearing?

MS. TREFZ: Yes.

THE COURT: All right. Mr. Peraire-Bueno, you may remain seated. I'm going to explain the purpose of a *Curcio* hearing first and then ask you a bunch of questions, which you are fine to stay seated for.

So we are here to make sure that you understand the potential risks to you for having your current counsel from Williams & Connolly serve as your attorneys in light of the fact that Anton contributed to your retainer with Williams &

Connolly.

You have a right to be represented by counsel who is free of any conflicts of interest that might adversely affect their ability to represent you. A potential conflict can arise when someone other than a client is paying for or paid for that client's attorney. That is particularly true here where that attorney is being paid in part by a codefendant. If an attorney is paid by someone other than the attorney's client, it could create an issue of whether that attorney's loyalties are with the client or with the person paying the attorney's fees. We're here today to address potential conflicts that arise in such a circumstance.

In addition to the right to conflict-free representation, you also have a right to counsel of choice. Because of that, I will permit representation by your chosen counsel, even where there exists a potential or actual conflict of interest, if I can ensure that you are fully informed of the conflict and that you are knowingly and voluntarily waiving your right to conflict-free representation.

So, again, the purpose of today's hearing is to ask you questions to make sure you understand your rights and the risks associated with your lawyer's potential conflicts. I will ask at the end if you want to continue being represented by your current counsel and whether you waive your right to conflict-free representation.

Ms. Tran, please administer the oath to James Peraire-Bueno.

(Defendant sworn)

THE DEPUTY CLERK: Please state your full name for the record, spelling out your last name slowly.

DEFENDANT J. PERAIRE-BUENO: James Peraire-Bueno, P-e-r-a-i-r-e-B-u-e-n-o.

THE DEPUTY CLERK: Thank you. Please be seated.

THE COURT: Mr. Peraire-Bueno, you are now under oath, which means if you answer any of my questions falsely, your answers to my questions may be used against you in another prosecution for perjury.

Do you understand?

DEFENDANT J. PERAIRE-BUENO: I do.

THE COURT: What is your full name?

DEFENDANT J. PERAIRE-BUENO: James Peraire-Bueno.

THE COURT: How old are you?

DEFENDANT J. PERAIRE-BUENO: 28.

THE COURT: How far did you go in school?

DEFENDANT J. PERAIRE-BUENO: Master's degree and start of post-master's.

THE COURT: Do you currently consult a doctor or mental health professional for any condition?

DEFENDANT J. PERAIRE-BUENO: No.

THE COURT: Have you taken any drugs, medicine, or

pills or consumed any alcoholic beverages in the past two days?

DEFENDANT J. PERAIRE-BUENO: I don't think so.

THE COURT: Is your mind clear today?

DEFENDANT J. PERAIRE-BUENO: Yes.

THE COURT: Do you understand what is happening today?

DEFENDANT J. PERAIRE-BUENO: I do.

THE COURT: Any counsel have any doubts as to the defendant's competence at this time?

MS. BHASKARAN: Not from the government.

MS. TREFZ: No, your Honor.

THE COURT: On the basis of Mr. Peraire-Bueno's responses to my questions, my observations of his demeanor here in court, and the representations of counsel, I find that he's fully competent to participate in the proceeding today.

Mr. Peraire-Bueno, are you currently represented by Katherine Trefz –– thank you –– and Daniel Shanahan of Williams & Connolly LLP?

DEFENDANT J. PERAIRE-BUENO: Yes, your Honor.

THE COURT: I'm going to refer to those lawyers as Williams & Connolly.

Are you also represented by Jonathan Bach of Shapiro Arato Bach?

DEFENDANT J. PERAIRE-BUENO: Yes.

THE COURT: Approximately how long has Williams & Connolly represented you?

DEFENDANT J. PERAIRE-BUENO: Since May in connection with the indictment and for about a year before that.

THE COURT: May of 2024?

DEFENDANT J. PERAIRE-BUENO: Oh.

THE COURT: Or 2023?

DEFENDANT J. PERAIRE-BUENO: May 2024 with the indictment.

THE COURT: Have you been satisfied with Williams & Connolly's and Mr. Bach's representation to date?

DEFENDANT J. PERAIRE-BUENO: Yes.

THE COURT: Do you wish to continue to be represented by Williams & Connolly and Mr. Bach?

DEFENDANT J. PERAIRE-BUENO: Yes.

THE COURT: Have you personally paid Williams & Connolly and Mr. Bach for their services in this case?

DEFENDANT J. PERAIRE-BUENO: Yes.

THE COURT: Do you know if anyone else has paid Williams & Connolly or Mr. Bach for their services in representing you?

DEFENDANT J. PERAIRE-BUENO: I understand that nobody else has paid Mr. Bach for his services, and I understand that my brother, Anton, has contributed to the retainer for Williams & Connolly's services.

THE COURT: Do you understand that you are entitled to be represented by an attorney whose loyalty to you is undivided

and who is not subject to any force or consideration that might interfere with that loyalty?

DEFENDANT J. PERAIRE-BUENO: I understand.

THE COURT: Is your choice to be represented by Williams & Connolly a choice you have made freely and voluntarily, without any promises, threats, or inducements being made or offered to you?

DEFENDANT J. PERAIRE-BUENO: Yes.

THE COURT: Do you understand that whenever someone other than the defendant is paying lawyers who are representing that defendant, it is possible that whoever is paying may have interests different than the defendant's interests?

DEFENDANT J. PERAIRE-BUENO: I understand.

THE COURT: Do you understand that a lawyer's judgment may be influenced by the wishes of whoever is paying their bills or what the lawyers think are the wishes of whoever is paying their bills rather than the wishes of the defendant?

DEFENDANT J. PERAIRE-BUENO: I understand.

THE COURT: So it is possible in this case that your counsel at Williams & Connolly may be influenced in the advice they give you and in the way they defend you by what they are told are the wishes of or what they think are the wishes of the people who are paying their bills. Those wishes may be different from yours.

Do you understand that?

DEFENDANT J. PERAIRE-BUENO: Yes.

THE COURT: Do you understand that this situation, that is, Williams & Connolly being paid by someone other than you, creates a risk to you that your lawyers may not be acting solely in your interests?

DEFENDANT J. PERAIRE-BUENO: I understand.

THE COURT: Do you understand that, particularly in this case when Williams & Connolly is being paid by funds provided by your codefendant, that this creates a heightened risk that your lawyers may not be acting solely in your interest?

DEFENDANT J. PERAIRE-BUENO: I understand.

THE COURT: For example, the payment of fees by your codefendant could influence Williams & Connolly to recommend that you avoid taking a step that would be contrary to your codefendant's interests.

Do you understand that?

DEFENDANT J. PERAIRE-BUENO: I understand.

THE COURT: Do you understand that you have the right to object to continued representation by Williams & Connolly based on the existence of a pretrial conflict of interest?

DEFENDANT J. PERAIRE-BUENO: Yes, your Honor.

THE COURT: It is important that you understand that no one, including the Court, can predict with any certainty the course that this case will take and that no one, including the

Court, can foresee all the ways in which you may be disadvantaged by proceeding with Williams & Connolly.

Do you understand that?

DEFENDANT J. PERAIRE-BUENO: I understand.

THE COURT: Do you understand that it is the view of this Court that there are risks in proceeding with an attorney who has a potential conflict of interest of this kind?

DEFENDANT J. PERAIRE-BUENO: Yes.

THE COURT: Do you agree that if the Court permits you to proceed with Williams & Connolly, in the event you are convicted, you will not be permitted to make any arguments on appeal or otherwise based on the representation by Williams & Connolly and the potential conflict we have discussed?

DEFENDANT J. PERAIRE-BUENO: Yes.

THE COURT: Do you agree to waive and give up any argument of that kind?

DEFENDANT J. PERAIRE-BUENO: I agree.

THE COURT: All right. To make sure that you've understood what we've been discussing, please describe in your own words your understanding of the conflict or conflicts of interest that may arise in this case.

DEFENDANT J. PERAIRE-BUENO: I understand that because my brother Anton is, in part, contributing to the retainer at Williams & Connolly that his interests may influence their representation of me in this case.

THE COURT: All right. Have you consulted a lawyer other than Williams & Connolly to determine whether you want them to continue representing you?

DEFENDANT J. PERAIRE-BUENO: Yes, I have consulted with Jonathan Bach.

THE COURT: With Mr. Bach?

DEFENDANT J. PERAIRE-BUENO: With Mr. Bach, yes.

THE COURT: I just want to confirm with all counsel that we agree that Mr. Bach can serve as other counsel to confer with respect to this conflict.

MS. BHASKARAN: Your Honor, we agree with that assessment.

THE COURT: All right. Mr. Peraire-Bueno, you met with Mr. Bach before today?

DEFENDANT J. PERAIRE-BUENO: I did.

THE COURT: In a brief moment, we are going to take a very brief recess so I can give you an opportunity to think about what you've been told. Instead of a brief recess, you also have the option of just adjourning today's proceeding altogether so you can give more thought to this matter.

Would you like to adjourn today's conference altogether, or we will take a very brief recess to give you additional time to think about this?

DEFENDANT J. PERAIRE-BUENO: There's no need to adjourn the proceedings. I've already spoken to Mr. Bach, and

I've already thought about these issues.

THE COURT: I am still, just out of an abundance of caution, going to take a very brief recess, and I will be back momentarily.

DEFENDANT J. PERAIRE-BUENO: Yeah.

(Recess)

THE COURT: We are back on the record.

Mr. Peraire-Bueno, after considering all that the Court has said about the ways in which having third parties and, in particular, your codefendant, paying your legal fees may adversely affect your defense, do you believe that it is in your best interest to continue being represented by Williams & Connolly.

DEFENDANT J. PERAIRE-BUENO: Yes, I have full confidence in their representation.

THE COURT: Is there anything that the Court has said that you wish to have explained further?

DEFENDANT J. PERAIRE-BUENO: No.

THE COURT: Do you understand that by choosing to be represented by Williams & Connolly, you are waiving your right to be represented by an attorney who has no conflict of interest?

DEFENDANT J. PERAIRE-BUENO: I do, your Honor.

THE COURT: Have you received any inducement or promise that may have influenced your decision?

DEFENDANT J. PERAIRE-BUENO: No.

THE COURT: Have you been threatened in any way concerning your decision today?

DEFENDANT J. PERAIRE-BUENO: I have not.

THE COURT: Are you knowingly and voluntarily waiving your right to conflict-free representation?

DEFENDANT J. PERAIRE-BUENO: I am.

THE COURT: Do you agree to waive any post-conviction argument on appeal or otherwise that, by virtue of having a third party pay your legal fees, you were denied effective assistance of counsel?

DEFENDANT J. PERAIRE-BUENO: I do, your Honor.

THE COURT: Counsel, are there any additional questions you would like me to pose?

MS. BHASKARAN: Not from the government.

MS. TREFZ: No, your Honor.

THE COURT: All right. Based on Mr. Peraire-Bueno's responses to my questions, I find that he understands the potential conflict in connection with continuing to be represented by Williams & Connolly. I further find that he has knowingly and voluntarily waived his rights with respect to potential conflicts. Accordingly, Williams & Connolly is permitted to continue their representation in this action.

MS. TREFZ: Thank you, your Honor.

THE COURT: Now let's turn to where we are in

discovery and set some deadlines.

I reviewed the transcript of the initial pretrial conference before Judge Willis. I understand that there's a substantial amount of ESI here. Where is the government with respect to producing documents?

MS. BHASKARAN: Your Honor, the government has substantially completed its production of Rule 16 materials that are currently in the government's possession. Just one kind of footnote to that point. There are several devices that were seized at the time of the arrest. We have not been able to get into those devices, so I do not consider those as part of the materials within our possession.

What we do possess we have substantially produced to the defendants. The government is continuing its responsiveness review pursuant to the search warrants in that case, and that review is ongoing. However, the defendants each have copies of their own ESI.

Unless there's specific questions from the Court on discovery, I can report that the parties conferred prior to this conference on a proposed schedule going forward.

THE COURT: I'll hear from you on that.

MS. BHASKARAN: So subject to the Court's approval, the parties would propose that the defendants' pretrial motions would be due on or about December 6 of this year; the government's response would be due on January 17, 2025; and the

defendants' reply, if any, would be due two weeks after January 17. There's some holidays around there, but sometime early February.

MS. TREFZ: I believe it was -- January 31 is two weeks.

THE COURT: Thank you.

All right. Did you all also discuss a potential trial date?

MS. BHASKARAN: We did, your Honor. We would propose a trial date in mid-October. It's the government's current estimate that its case-in-chief would be about two weeks.

THE COURT: How is October 14? The 13th is Columbus Day, so we would start on that Tuesday.

Any objection to that date, Ms. Bhaskaran?

MS. BHASKARAN: Not from the government.

THE COURT: Mr. Marx?

MR. MARX: No, your Honor.

THE COURT: Ms. Trefz?

MS. TREFZ: No.

THE COURT: I'll set the final pretrial conference date in a separate order along with -- unless you all know of any bad dates at this point, I intend to just set it in an order following this conference along with the other pretrial dates that are required in my individual rules. So I will just put that together in a scheduling order and issue that. Then

if there are any major conflicts, you can always request an adjournment of that final pretrial conference date, and we can look for a better time if the date and time I set doesn't work.

Does that work for everyone?

Any objection to that, Ms. Bhaskaran?

MS. BHASKARAN: Not for the government.

THE COURT: Mr. Marx?

MR. MARX: No, your Honor.

THE COURT: Ms. Trefz?

MS. TREFZ: No, your Honor. If there are particular things that you'd like the parties to confer on with respect to those pretrial dates, then we're happy to do so.

The one thing I wanted to just note is that we anticipate this to be a case where there are likely to be complex motions, including complex motions *in limine*. That may be apparent to your Honor from the nature of the case. And so if it helps to have the parties confer over earlier deadlines, or something like that, to help the Court, we're happy to do so.

THE COURT: Thank you. I will consider that and potentially propose that in the order.

All right. Do the parties anticipate experts here, Ms. Bhaskaran?

MS. BHASKARAN: Yes, your Honor.

THE COURT: I see counsel for defendants nodding, so

I'm going to set the expert disclosure dates based on the standard that I typically set, which is that any expert disclosures from the government will be due 60 days before trial and any expert disclosures from the defense will be due 30 days before trial. To the extent that the parties think that this case warrants different deadlines, you all can confer and submit different dates by letter motion or at the next conference.

All right. I know that Judge Willis went through 5(f) obligations and warned the government about its *Brady* obligations at the last conference with both defendants present, so I will not reiterate that. But I don't believe a Rule 5(f) order has been issued on the docket yet, so I will do so after today's conference.

Is there anything else other than speedy trial for us to discuss, Ms. Bhaskaran?

MS. BHASKARAN: Not from the government.

THE COURT: Mr. Marx?

MR. MARX: No, your Honor.

THE COURT: Ms. Trefz?

MS. TREFZ: No, your Honor.

THE COURT: Does the government wish to make an application with respect to speedy trial?

MS. BHASKARAN: Yes, your Honor. The government moves to exclude time between now and October 4, 2025. The

government submits that that exclusion will permit the defense to continue to review the discovery, prepare pretrial motions, and prepare for trial.

THE COURT: Did you mean the 14th?

MS. BHASKARAN: Sorry, yes, October 14, 2025.

THE COURT: All right. Any objection?

MR. MARX: No, your Honor.

MS. TREFZ: No, your Honor.

THE COURT: All right. I will exclude time under the Speedy Trial Act from today's date until October 14, 2025. I find -- I think my mic just went down, but hopefully you can all hear me.

I find that the ends of justice served by excluding such time outweigh the interests of the public and the defendants in a speedy trial because it will permit the defense to review discovery, bring any motions, and will give us a chance to have a hearing, if a hearing is necessary, and will give everyone an opportunity to prepare for trial.

All right. We are adjourned. Thank you.

(Adjourned)