

**Daniel N. Marx**
TEL: 857-321-8360
FAX: 857-321-8361
DMARX@FICKMARX.COM

May 15, 2025

**By ECF**
The Honorable Jessica G. L. Clarke
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Courtroom 11B
New York, NY  10007-1312

   Re: *United States v. Peraire-Bueno*, No. 1:24-cr-00293

Dear Judge Clarke:

   We write on behalf of our clients, Anton and James Peraire-Bueno, in opposition to the government's motion for reconsideration, ECF 83 (Mot.), of this Court's April 17, 2025 Order scheduling a *Franks* hearing, ECF 82 (Order).

   Despite submitting a 20-page Opposition to the Peraire-Buenos' Motion to Suppress or, Alternatively, for a *Franks* Hearing, ECF 61 at 42-63, and then presenting extensive argument at the motion hearing, ECF 78 at 19-40, the government is unhappy with this Court's decision to hold a *Franks* hearing and wants a do-over. But the government is not entitled to reconsideration under the rigorous standard for such extraordinary relief. In this case, where magistrate judges may have been misled and the Fourth Amendment may have been violated, the law does not simply permit a *Franks* hearing, it "require[s]" one. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *see United States v. Lauria*, 70 F.4th 106, 133 (2d Cir. 2023) (remanding for required hearing). This Court's decision correctly applied that controlling authority. In any event, the decision to hold a hearing was well within its broad discretion. Thus, the reconsideration motion should be denied.

**I. The Government Cannot Satisfy the Demanding Reconsideration Standard.**

   As this Court has repeatedly observed, the Second Circuit has adopted a demanding standard for reconsideration.

> [A reconsideration motion] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple. Rather, the standard for granting a . . . motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22-cv-1138 (JGLC), 2023 U.S. Dist. LEXIS 185008, at *2-3 (S.D.N.Y. Oct. 16, 2023) (denying reconsideration motion) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)); *see also, e.g.*, *Poletti v. Pepsi-Bottling Co. of N.Y., Inc.*, No. 21-cv-7603 (JGLC), 2025 U.S. Dist. LEXIS 2535, at *4 (S.D.N.Y. Jan. 7, 2025) (denying reconsideration motion).

Under this strict standard, "[r]econsideration is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Poletti*, 2025 U.S. Dist. LEXIS 2535, at *3. It can be allowed "*only* in limited circumstances when the petitioner identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* at *4 (emphasis in original) (quoting *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022)); *see also Goodman v. City of New York*, No. 23-cv-9648 (JGLC), 2025 U.S. Dist. LEXIS 13124, at *7 (S.D.N.Y. Jan. 24, 2025) (applying same standard and denying reconsideration motion); *Castro v. Smith*, No. 16-cv-8147 (JGLC), 2023 U.S. Dist. LEXIS 230968, at *13-14 (S.D.N.Y. Dec. 29, 2023) (same).

The government pays lip service to the reconsideration standard and fails to satisfy it. The government identifies no intervening change in law or new evidence. Nor does it assert this Court committed any "clear error." Instead, the motion primarily rests on the baseless premise that holding a hearing would be manifestly unjust *to Special Agent Dias*. *See* Mot. at 8 ("Requiring the case agent to sit for [a] *Franks* hearing . . . would be a manifest injustice."); *see id.* at 1 (invoking possibility of "serious consequences for [the] agent's career").

The concern for Dias is factually unsupported and legally irrelevant. An agent's duty to testify truthfully at a hearing about his prior statements to the Court is an obligation of his job, one the Fourth Amendment and *Franks* impose. Moreover, "manifest injustice" refers to the obviousness of a legal error, not any potential harm to a third party. *See United States v. LeSane*, No. 22-cr-110 (VSB), 2023 U.S. Dist. LEXIS 9685, at *8 (S.D.N.Y. Jan. 19, 2023) ("In the context of a motion for reconsideration, 'manifest injustice' is defined as 'an error committed by the trial court that is direct, obvious, and observable.'"); *see also SEC v. Stewart*, No. 98-cv-2636 (LAP), 2024 U.S. Dist. LEXIS 17903, at *12-13 (S.D.N.Y. Feb. 1, 2024) ("At least one court has held . . . reconsideration is not warranted unless the prior decision is 'dead wrong.'").[1]

## II.     The Court's Order Was Correct and Well Within its Considerable Discretion.

Under the *Franks* framework, an evidentiary hearing is "required" when a defendant makes a "substantial preliminary showing" that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that the statement was "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56; *see Lauria*, 70 F.4th at 125. This Court correctly applied that standard and expressly found the Peraire-Buenos met it. *See* Order at 4 ("Because Defendants have made a substantial preliminary showing

---

[1] The government asserts that *Franks* hearings are "exceedingly rare." Mot. at 1. Since the standard requires a preliminary showing of material falsehoods in an affidavit, one would hope so. But as a legal matter, the purported rarity does not matter, and of course, such hearings are ordered and held when appropriate. *See, e.g.*, *United States v. Kostin*, No. 24-cr-091 (GHW) (S.D.N.Y.); *United States v. Valentin*, No. 23-cr-292 (RPK) (S.D.N.Y.); *United States v. Ricketts*, No. 22-cr-106 (LDH) (S.D.N.Y.); *United States v. Hernandez*, No. 19-cr-97 (VM) (S.D.N.Y.); *United States v. Rajaratnam*, No. 09-cr-1184 (RJH) (S.D.N.Y.); *see also United States v. Lopez*, 23-cr-189 (GRB) (E.D.N.Y.); *United States v. Zhang*, No. 22-cr-208 (CBA) (E.D.N.Y.); *United States v. Powell*, No. 21-cr-572 (EK) (E.D.N.Y.); *United States v. Cerda*, No. 21-cr-451 (GRB) (E.D.N.Y.).

that the Special Agent made materially false statements in, at least, reckless disregard for the truth, a *Franks* hearing is appropriate."). The government's motion cites the same cases as this Court's Order, *compare* Order at 2-3 (citing *United States v. Sandalo*, 70 F.4th 77 (2d Cir. 2023)), *with* Mot. at 2 (same), and the government's "mere disagreement" with the Court's application of the law does not warrant reconsideration. *McKenzie-Morris*, 2023 U.S. Dist. LEXIS 185008, at *3.[2]

Notably, the government cites no case holding that ordering a *Franks* hearing was an error. As then-Judge Gorsuch explained in *United States v. Herrera*, 782 F.3d 571 (10th Cir. 2015), "*Franks* speaks only of the showing a defendant must make to 'mandate' an evidentiary hearing," but "[n]othing in the opinion or the logic on which it rests suggests a district court must forswear an evidentiary hearing unless the defendant's motion makes one constitutionally compulsory." *Id.* at 573. "To the contrary, district courts generally enjoy a fair amount of discretion in choosing the procedures they find most helpful for resolving pretrial motions, including whether to . . . hold an evidentiary hearing." *Id.* at 573-74; *accord, e.g.*, *United States v. Clark*, 935 F.3d 558, 563 (7th Cir. 2019) ("Merely to obtain a *Franks* hearing, . . . a defendant does not need to prove the *Franks* violation.").[3]

### a. Falsity

Far from making a general or conclusory attack on the warrant affidavits, the Peraire-Buenos identified specific false statements that Dias made: (1) the Peraire-Buenos proposed transactions that they had "no intention of executing"; (2) the Peraire-Buenos targeted "more obscure cryptocurrencies"; (3) the alleged victims were "cryptocurrency arbitrag[uers]" rather than sandwich attackers; (4) the Peraire-Buenos "altered" transactions that the alleged victims had proposed; and (5) they "tampered" with the Ethereum blockchain. Dias also manipulated (6) a diagram of a proposal for the MEV Boost system to omit critical information that undermines any fraud or CFAA allegations. ECF 53 at 4-15. At the hearing, this Court heard argument about all six false statements. ECF 78 at 19-40. And the Order summarizes them, before finding the Peraire-Buenos "made the requisite preliminary showing" to justify a *Franks* hearing. Order at 2-3.

The government has never seriously disputed that these statements were false. In defending Dias, it has accused the Peraire-Buenos of "quibbl[ing] over word choice," ECF 61 at 54; *see* ECF 78 at 33 ("those are really just sort of quibbles with a characterization of the defendants' conduct"),

---

[2] The "substantial preliminary showing" standard was not intended to erect an insurmountable obstacle for defendants, but merely to establish a "sensible threshold" to prevent "frivolous challenges" to search warrants and "unnecessary pretrial delays." *United States v. Figueroa*, 750 F.2d 232, 237 (2d Cir. 1984). Neither concern applies here.

[3] Arguing a hearing "must be denied," the government cites *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987), emphasizing the word "must." Mot. at 2; *see also id.* at 6. But *Levasseur* did not establish any "must be denied" principle, and later cases have held that "[i]f, after setting aside the allegedly misleading statements . . . , the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court *need not* conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (emphasis added) (citing *Levasseur*).

baldly asserting that none of his many inaccuracies were material but failing to explain that claim. Although the reconsideration motion insists the government "has not conceded any prong of the *Franks* standard," including falsity, Mot. at 8, it merely cites to prior briefing. That is an obvious—and improper—attempt to re-litigate an issue that this Court has already decided.

### b.  Materiality

This Court correctly found the Peraire-Buenos made a substantial preliminary showing that the challenged statements were material to probable cause. Ignoring that finding, the government criticizes this Court for ordering a *Franks* hearing but "reserv[ing] decision on th[e] materiality prong." Mot. at 2. As noted above, that is not what this Court did. It expressly found the Peraire-Buenos made a substantial *preliminary* showing on materiality and stated it would make its *final* decision only after the *Franks* hearing and based on a complete record.

That decision was entirely appropriate, and it favored the government. As this Court noted, the government failed to "address[] this argument [about materiality] in its brief or at oral argument" or to "address[] more broadly what would remain in the affidavits if the statements at issue were removed." Order at 3 n.3. This Court could have ruled in the Peraire-Buenos' favor based on the government's forfeiture alone. Instead, it exercised its discretion to "allow[] the parties to argue this issue further" and make the "ultimate[] determin[ation]" about materiality "after the hearing." Order at 4. The government is wrong to seize on the second chance to argue materiality as a reason for reconsideration.

On materiality, the *Franks* process is straightforward: "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." *United States v. Trzaska*, 111 F.3d 1019, 1027-28 (2d Cir. 1997) (citing *Franks*, 438 U.S. at 171-72); *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985) (holding "[t]he ultimate inquiry" is whether, after "putting aside" false statements, "there remains a residue of independent and lawful information sufficient to support probable cause"). In its Opposition and at the hearing, the government did not provide a "corrected" affidavit. Only now, as an exhibit to the reconsideration motion, it offers a re-written one. But the new affidavit fails to follow the *Franks* process or to establish probable cause.

The affidavit is legally improper because, contrary to Second Circuit law, it has not simply "excise[d]" the false statements, but improperly *re-written* the affidavit. *See Lauria*, 70 F.4th at 125-26 (holding that, beyond "the deletion of misstatements," the *Franks* framework does not "permit[] the addition of truthful information supporting probable cause that was possessed by investigating officers at the time the warrant was sought"). Take, for example, the false statements in the affidavit that the Peraire-Buenos "altered" the transactions that the alleged victims had proposed. Rather than excise these statements, the government proposes, in 7 different places, to revise them to say "re-ordered," which means something entirely different than "altered." ECF 83-1 at 22, 23, 25, 30, 34. That is precisely the sort of *ex post* "correction" that *Franks* does not allow, and this Court should not consider it.[4]

---

[4] The "corrected" affidavit also retains the false statement that the Peraire-Buenos, as "hackers,"

Hon. Jessica G. L. Clarke
May 15, 2025
Page 5 of 7

In any event, stripped of Dias's false statements, the re-written affidavit fails to establish probable cause that the Peraire-Buenos committed any crime, as evidenced by the ten bullet points that the government highlights in its reconsideration motion. Mot. at 4-5.

Half of the bullets concern allegations that merely identify the Peraire-Buenos, *see* Bullet 10 (noting the Peraire-Buenos registered bank accounts in their own names); describe lawful trading activities, *see* Bullets 5 and 6 (claiming they executed transactions "to analyze the trading behavior" of the alleged victims and proposed transactions "likely to cause" the alleged victims to propose their own transactions, *i.e.*, to launch sandwich attacks); and summarize the lawful movement of funds, *see* Bullets 3 (alleging cryptocurrency was converted to U.S. dollars and deposited to accounts "controlled by the defendants") and 4 (alleging movement of funds). Conducting due diligence and employing trading strategies are lawful activities. And absent evidence of a "fraud" that generated "proceeds," there is nothing illegal about obtaining tokens through trading, converting them to money, and moving the money between accounts.[5]

Other bullets consist of conclusory labels, like "exploited," and legal jargon, like "theft," that try to cast the conduct as unlawful but, in doing so, present no actual facts. *See* Bullet 1. Two of the bullets describe the routine actions of third-parties: foreign law enforcement froze funds "shortly after the public reports," which the alleged victims instigated, *see* Bullet 2[6], and other Ethereum users imposed a private economic penalty through "slashing" fees, *see* Bullet 9, which has happened nearly 500 times on the network for various innocent reasons, *see* https://beaconcha.in/validators/slashings, a fact that was readily available to Dias because all "slashing" events are publicly recorded on the blockchain. These actions were not taken pursuant to any U.S. law, nor did they establish probable cause concerning any crime.

That leaves only Bullets 7 and 8, which allege the Peraire-Buenos "exploited a vulnerability in certain computer code" by sending a "False Signature," obtaining a proposed block that contained the alleged victims' proposed transactions, and then "removing certain transactions from the proposed block and replacing them with others." As an initial matter, these bullets gloss over the misleading impression the original affidavit imparted regarding this re-ordering of transactions. It alleged the Peraire-Buenos "alter[ed]" the transactions themselves, which the

---

obtained the alleged victims' "private trading data" and "*manipulated* that data to the hacker(s) advantage." ECF 83-1 at 11 (emphasis added). But the Peraire-Buenos are not "hackers"; just as they did not "alter" any proposed transactions, they did not "manipulate" the alleged victims' data.

[5] Bullet 4 misstates the affidavit (both versions). Dias stated that, *prior to* the "exploit," the Peraire-Buenos moved funds through "foreign cryptocurrency exchange[s]" and used a "privacy layer." ECF 56-8 at ¶¶ 22(c), 22(e), 23(a); ECF 83-1 at ¶¶ 22(c), 22(e), 23(a). But the government incorrectly states the Peraire-Buenos used those "steps" to conceal the supposed "proceeds" *after the* "exploit." Mot. at 4. That is wrong, and it is contradicted by the Appendix to the affidavit.

[6] The affidavit states that foreign law enforcement took steps to freeze assets "shortly after" the public reports about the alleged "exploit," not "because of" those reports. ECF 56-8 at ¶ 16(h) n.6. As Dias knew, the assets were frozen in response to a request by the alleged foreign victim.

government now concedes did not happen. The false allegation of altering, which was central to the supposed fraud or "hacking" scheme, cannot easily be excised from the affidavit under the *Franks* framework. But even if the government could permissibly swap out "altering" with "re-ordering," as they attempt to do for Bullets 7 and 8, the new affidavit would not establish probable cause. Despite labeling the signature as "false," the affidavit does not allege any facts that would constitute a misrepresentation. Additionally, there is nothing criminal about a validator re-ordering proposed transactions before publishing a new block, and the affidavit fails to allege any promise or duty prohibiting such conduct. Indeed, in defining "MEV," it concedes that a validator has "[the] ability to arbitrarily include, exclude, *or re-order transactions* from the blocks that they propose." ECF 56-8, ¶ 14(d) (emphasis added); ECF 83-1, ¶ 14(d) (same).

### c. State of Mind

The government misreads the Order when it accuses this Court of having placed too much weight on "apparent discrepancies between the affidavit and the indictment" in its analysis. Mot. at 7. With regard to Dias's state of mind, this Court found the "conflict" between the false statements in his affidavit (*e.g.*, that the Peraire-Buenos proposed trades that they did not intend to execute) and "publicly available information," from sources that Dias claimed to have reviewed (*e.g.*, data from Etherscan that showed the trades at issue were executed as proposed and included in the blockchain) permits a reasonable inference that Dias acted with "at least a reckless disregard for the truth." Order at 3. That analysis was appropriate, as the Second Circuit has held "an affiant's recklessness can be inferred from circumstantial evidence." *United States v. Discala*, No. 22-675, 2023 U.S. App. LEXIS 15636, at *3 (2d Cir. June 22, 2023); *cf. Salameh*, 152 F.3d at 143 (recognizing "most evidence of intent is circumstantial"). After the *Franks* hearing, with a complete record, including Dias's testimony under oath, this Court will be able make a final determination about his state of mind when he applied for the Google warrants.

## III. Conclusion

Because this Court committed no clear error and because the *Franks* hearing will cause no manifest injustice, the government's motion for reconsideration should be denied.

Sincerely,

*/s/ Daniel N. Marx*  
Daniel N. Marx  
William W. Fick (*pro hac vice*)  
Fick & Marx LLP  
24 Federal Street, 4th Floor  
Boston, MA  02110  
(857) 321-8360  
dmarx@fickmarx.com  
wfick@fickmarx.com  

*Counsel for Anton Peraire-Bueno*

/s/ *Katherine Trefz*  
Katherine Trefz (*pro hac vice*)  
Daniel Shanahan (*pro hac vice*)  
Patrick Looby (*pro hac vice*)  
Williams & Connolly LLP  
680 Maine Avenue S.W.  
Washington, D.C.  20024  
(202) 434-5000  
ktrefz@wc.com  
dshanahan@wc.com  
plooby@wc.com

                                        Jonathan P. Bach
                                        Shapiro Arato Bach LLP
                                        1140 Avenue of the Americas, 17th Floor
                                        New York, NY  10036
                                        (212) 257-4897
                                        jbach@shapiroarato.com

                                        *Counsel for James Peraire-Bueno*