IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>v.<br><br>ANTON PERAIRE-BUENO, and JAMES PERAIRE-BUENO,<br><br>      Defendants. | Case No.: 1:24-cr-00293-JGLC |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION TO EXCLUDE EVIDENCE THAT TETHER FROZE
CRYPTOCURRENCY AT THE BEHEST OF A FOREIGN GOVERNMENT**

Defendants James and Anton Peraire-Bueno respectfully move pursuant to Federal Rules of Evidence 401, 402, and 403 to exclude evidence and argument indicating that the blockchain platform Tether froze the Peraire-Buenos' accounts at the request of a foreign government (Israeli law enforcement).

\*      \*      \*

On April 10, 2023, one week after the alleged "Exploit," Tether "blacklisted" the Peraire-Buenos' "Gnosis vault"—*i.e.*, the cryptocurrency wallet into which they had deposited the proceeds of their trading strategy. The following day, one of the anonymous alleged Victim Traders sent the Peraire-Buenos' validator account an anonymous message claiming responsibility for the freeze. Documents produced by the government pursuant to Rule 16, originally produced by Nonparty-1, indicate at least some interaction between Nonparty-1 and Tether about the cryptocurrency (such as how long Tether could keep it frozen without the intervention of a government authority). In September 2023, the Peraire-Buenos sought information from Tether as to when their cryptocurrency would be unfrozen. On September 6, Tether informed the Peraire-

Buenos that they would need to discuss the matter with Israel's cybercrime division. Ex. 3 (DX 222).

It is likely that the fact that Tether froze the USDT will come up in the trial in some respect. While the Peraire-Buenos doubt the probative value of this fact, they understand that this fact is likely to be introduced through some document or testimony regarding post-Exploit interactions between the Peraire-Buenos and the sandwich attackers or the movement of alleged proceeds. But the government should not be permitted to go a step further and introduce evidence or argument that Tether froze the cryptocurrency at the behest of foreign law enforcement.

In that regard, the government has suggested that the fact that the Tether was frozen on a request by foreign law enforcement agency at least supported a finding of probable cause at the search warrant stage, ECF 61 at 55; ECF 83 at 4, and the Court agreed based on the standard relevant for that preliminary question, ECF 112 at 31. The government's framing of the issue suggests that it may also seek to introduce this point at the trial and try to argue that the involvement of foreign law enforcement put the Peraire-Buenos on notice that they had committed a crime. The government should not be able to make this unfairly prejudicial argument that is likely to lead to a distracting mini trial.

First, the evidence is irrelevant and thus inadmissible under Federal Rules of Evidence 401 and 402. The freeze occurred after the alleged Exploit and so cannot be relevant to the Peraire-Buenos' state of mind for the wire fraud charges. It is also irrelevant for the alleged money laundering offense. The mere fact that Tether froze the funds after consultation with Israeli law enforcement, if that is the case, does not establish notice of a violation Israeli criminal law. The government has given no indication that it intends to introduce the type of evidence likely necessary to support that theory. It has disclosed no expert on Israeli law; it has not included any

2

witnesses from Israeli law enforcement or from Tether on its witness list; and it has produced no documents on Tether's process for freezing funds generally or showing what information (if any) was exchanged between Tether and Israeli law enforcement in this instance. Without any foundation, the evidence that Tether froze the funds at the request of the Israeli authorities has no relevance.

Second, if offered for any relevance theory, this evidence presents a classic mini trial, which will confuse the jury, needlessly prolong the trial, and prejudice the Peraire-Buenos. *See* Fed. R. Evid. 403. Indeed, "mini trial" does not capture the complexity of the trial-within-a-trial that this evidence would introduce implicating at least the following questions: What is the standard in Israel for opening an investigation or requesting a freeze? What information was the Israeli authority relying on? Had it done any investigation aside from receiving information from Nonparty-1? What (if any) Israeli statutes were claimed to have been violated? Does Israeli law enforcement also investigate civil violations of the law?

To be clear, the Peraire-Buenos have never received any outreach from the Israeli government. Rather, these questions would apparently be raised and litigated for the first time in this case. The potential for a mini trial on this issue of questionable probative value mandates exclusion under Rule 403. *See, e.g.*, *Jones v. Jasper Wyman & Son*, 639 F. Supp. 3d 192, 200 (D. Me. 2022) ("[T]he Court sees the interjection of the allegations and defenses in the state lawsuit under a different statute as likely confusing to the jury and a waste of time as counsel battle about whether the state lawsuit is sufficiently comparable to the federal lawsuit to affect the credibility of the parties' positions in this lawsuit.").

Second, the unfair prejudice from the mere suggestion that Tether froze the funds at Israeli officials' request would substantially outweigh any probative value regarding the money

laundering count and would also infect the wire fraud counts. The unfair and unsubstantiated inference the government would seek to have the jury draw would be to credit the Israeli investigation, infer the conduct was, in fact, a violation of foreign law, and bolster the government's own fraud charges under United States law. In other words, the inference from the freeze evidence is that foreign law enforcement *also* thought the alleged Exploit was criminal. A jury could mistakenly believe that this would make it more likely that the government's legal theory under the charged United States statutes is correct.

Inviting such a speculative inferential leap by the jury runs afoul of basic due process principles. An investigation of an uncertain nature—or even an accusation by a government entity in a charging document—does not mean that any crime has in fact been committed. Courts have long noted that references to violations of other laws is improper "if their purpose or effect were to suggest to the jury that it could find the defendant guilty simply by reason of his violation of the regulation." *United States v. McElroy*, 910 F.2d 1016, 1023 (2d Cir. 1990); *see also, e.g.*, *United States v. Wolf*, 820 F.2d 1499, 1505 (9th Cir. 1987); *United States v. Christo*, 614 F.2d 486, 492 (5th Cir. 1980). The government should not be permitted to satisfy its own burden with the unclear, and unsubstantiated, work of a foreign authority.

Date: August 22, 2025   Respectfully submitted,

By: */s/ Katherine Trefz*   By: */s/ Daniel N. Marx*

Katherine Trefz (*pro hac vice*)   Daniel N. Marx
Daniel Shanahan (*pro hac vice*)   William W. Fick (*pro hac vice*)
Patrick J. Looby (*pro hac vice*)   Fick & Marx LLP
Williams & Connolly LLP   24 Federal Street, 4th Floor
680 Maine Avenue SW   Boston, MA 02110
Washington, DC 20024   Tel: 857-321-8360
Tel: (202) 434-5000   dmarx@fickmarx.com
ktrefz@wc.com   wfick@fickmarx.com
dshanahan@wc.com
plooby@wc.com   *Counsel for Defendant*

4

*Anton Peraire-Bueno*

Jonathan P. Bach
Shapiro Arato Bach
1140 Avenue of the Americas
17th Floor
New York, NY 10036
Tel: 212-257-4897
jbach@shapiroarato.com

*Counsel for Defendant*
*James Peraire-Bueno*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 22, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

                                                                         */s/ Katherine Trefz*
                                                                         Katherine Trefz